PATTERSON et al. v. IAEGER & S. RY. CO.

(Circuit Court of Appeals, Fourth Circuit. April 12, 1910.)

No. 825.

1. APPEAL AND ERROR (§ 1057*)— REVIEW—HARMLESS ERROR—EXCLUSION OF EVIDENCE.

The exclusion of evidence which is merely cumulative, where there was a considerable amount of evidence admitted on the same issue, is without prejudice, and not such error as to require a reversal.

[Ed. Note.—For other cases, see Appeal and Error, Cent. Dig. § 4194; Dec. Dig. § 1057.*]

2. EMINENT DOMAIN (§ 141*)—PROCEEDINGS—DAMAGE TO LAND NOT TAKEN.

In a proceeding to condemn right of way for a railroad over a tract of 1,500 acres of land owned by defendants, bounded by a river and shown to contain a valuable vein of coal, the tract being hilly, except for a strip of bottom along the river, which was cut off from the remainder by such right of way along the base of the hills, defendants were entitled to have the land considered as coal land, and it was error to exclude evidence as to the lessened value of the remainder of the tract by reason of the cutting off by the right of way of the level land, which was the only available location for mining works, without excavating therefor from the foot of the hills above the right of way.

[Ed. Note.—For other cases, see Eminent Domain, Cent. Dig. §§ 372–376; Dec. Dig. § 141.*

Consequential and indirect damages in condemnation proceedings, see note to High Bridge Lumber Co. v. United States, 16 C. C. A. 468.]

In Error to the Circuit Court of the United States for the Southern District of West Virginia, at Bluefield.

Condemnation proceeding by the Iaeger & Southern Railway Company against Augustus L. Patterson, Roswell H. Patterson, and Levi A. Patterson, executors and trustees of the estate of Roswell P. Patterson, deceased. From the judgment awarding compensation, defendants bring error. Reversed.

On the 15th day of September, 1904, the Iaeger & Southern Railway Company filed its application in the circuit court of McDowell county, W. Va., to condemn for its purposes two parcels of land—one of said parcels containing 15.15 acres, and the other .34 of an acre—out of a tract of about 1,560 acres belonging to plaintiffs in error. The application states that the two parcels of land are intended to be used for the purposes of constructing, maintaining, and operating a public railroad, and that all of said parcels were necessary for the purposes of excavations, embankments, deep cuts, and fillings. On the 1st of October, 1904, the defendants in the application tendered their petition to the circuit court of McDowell county, W. Va., asking to remove the case to the Circuit Court of the United States; but the petition for

---

*For other cases see same topic & § NUMBER in Dec. & Am. Digs. 1907 to date, & Rep'r Indexes

removal was denied, and the state court then appointed five freeholders to act as commissioners and ascertain what would be a just compensation for the land to be taken and damage to the residue of the tract, beyond the peculiar benefits to be derived in respect to such residue from the work to be constructed. The commissioners so appointed on the 22d day of October, 1904, reported that $5,000 would be a just compensation for the land to be taken and for damages to the residue of the tract beyond the peculiar benefits which would be derived in respect to such residue from the work to be constructed. The defendants and the applicants both excepted to said report, the defendants on the ground that the amount awarded was inadequate, and the applicant on the ground that it was excessive, and both demanded a trial by jury. The defendants again presented their petition, asking for the case to be removed to the United States Circuit Court for the Southern District of West Virginia, and thereupon the case was removed to said United States Circuit Court holding its term at Bluefield, in said district. On the 22d day of October, 1907, the case was called for hearing in said United States Circuit Court, and on that day the applicant withdrew its exception to said report.

At the trial it was shown that the defendants' tract, a part of which had been taken, consisted of about 1,560 acres; that the tract fronted on the Dry Fork river; that along the Dry Fork river there were from 25 to 30 acres of comparatively level land suitable for putting in and operating a plant for coal mining purposes, and also suitable for building purposes, and which had been bought for that purpose. The remainder of the tract is rough and hilly, and not suitable for building purposes. The railroad is built at the foot of the slope, taking a considerable part of the level land, and cutting off the remainder of the level land from the main body of the tract. A map showing the location of the railroad and Dry Fork river is to be found on page 56 of the record. From this map, and from the evidence of G. S. Gildersleeve, it can be seen that there is about 15 acres of comparatively level land cut off by the railroad to the south, and lying between the railroad and the Dry Fork river, and about 1,525 acres of rough, hilly land on the north side of the railroad. The tract was shown to be underlaid with coal. At Peeryville, about a quarter of a mile up the river above the tract, a coal vein is opened at the edge of the river showing 4½ feet in thickness of coal. This is known as the War Creek seam. On the tract was put down four bore holes by the defendants, now plaintiffs in error. These are shown on the map found at page 56 of the record. At figure 3 on the map a bore hole was put down, and at 32 feet 2 inches from the surface, a coal vein was found 4 feet in thickness. This coal vein was about 30 feet below the bed of the river. That this is the same as the War Creek vein, found at Peeryville, is shown by the evidence of P. W. Anderson in answer to the thirty-eighth question. This bore hole No. 3 is toward the lower end of the tract, and at a point to which most of the tract will drain, and is shown to be the most accessible point for putting in a plant for mining and operating the property. This was clean coal. The other points at which bore holes were put down by plaintiffs in error were not considered to be true tests as to the coal underlying the tract, on account of the places being cut out by water, and on account of the ravine and slide at hole No 2. As a coal seam 4 feet in thickness of clean coal was found at the lower end of the tract, which is shown to be the same as the War Creek seam opened at Peeryville about one-quarter of a mile up the river from the tract, being there 4½ feet in thickness, it is therefore contended that the whole of the tract, including the 15½ acres actually taken, is underlaid with at least a seam of clean coal 4 feet in thickness.

During the progress of the trial the plaintiffs in error offered evidence which showed, or tended to show, the market value of the land actually taken, considered as coal-bearing land or as coal property, and which showed, or tended to show, the quality and commercial value of said coal, and much of which evidence the court excluded from the consideration of the jury, and to the rulings of the court in these particulars a number of bills of exceptions were taken, which will be hereafter more particularly referred to. Also during the progress of the trial the plaintiffs in error offered evidence which showed damages resulting to the residue of their tract by reason of the land next to the Dry Fork river being cut off by the railroad, and whereby the approach

and access for the purpose of mining the coal from the main body of the tract is cut off, and whereby the mining of the coal is made more inconvenient and expensive, and evidence which showed the increased cost of mining said coal by reason of the access or approach being cut off. ' This evidence was also excluded from the consideration of the jury, and to the rulings of the court on this evidence a number of bills of exceptions were taken, which will also be hereafter referred to. Plaintiffs in error also took certain bills of exceptions to the evidence admitted for applicant, and also took exceptions to the ruling of the court in refusing certain instructions offered for plaintiffs in error and to the charge given to the jury by the court, all of which will be hereafter referred to.

The jury gave a verdict for the plaintiffs in error for only $5,000 as compensation for the land actually taken and damage to the residue of the tract beyond the peculiar benefits to be derived in respect to such residue from the construction of the railroad. Plaintiffs in error moved the court to set aside the verdict and grant them a new trial on the grounds that the verdict was contrary to the law and evidence, and not supported by the evidence, and for misdirection of the court to the jury; but the court overruled said motion and gave judgment on the 23d day of October, 1907, that the $5,000 which had been awarded by the commissioners by their report on the 22d of October, 1904, should be paid the plaintiffs in error. The court, however, refused to require the applicant to pay costs and to pay interest on the $5,000 from the time of the condemnation, to wit, the 22d day of October, 1904, although the applicant, as shown above, had excepted to the report of the commissioners, and had not withdrawn its exceptions until the time of the trial. At the same time the court gave judgment that the two parcels of land, to wit, the 15.15 acres and .34 of an acre, should be vested absolutely in fee simple in the applicant. It is from this judgment that the writ of error has been obtained.

J. W. Chapman (A. P. Gillespie, on the brief), for plaintiffs in error.

D. J. F. Strother and W. W. Hughes (Theodore W. Reath and Anderson, Strother & Hughes, on the brief), for defendant in error.

Before PRITCHARD, Circuit Judge, and WADDILL and CONNOR, District Judges.

PRITCHARD, Circuit Judge (after stating the facts as above). There are various assignments of error, but we are of opinion that the learned judge who tried this case clearly stated the law as to the proper method of ascertaining the damages which the plaintiff below was entitled to recover for the land actually taken. While some evidence in regard to the 15½-acre tract taken by the railroad company was excluded, yet there was a quantity of evidence along the same general line admitted. However, that which was excluded was cumulative only. Such error as the judge may have committed in excluding evidence in this respect is nonprejudicial, and is not sufficient to work a reversal or a new trial. The charge as to the law bearing upon the question of benefits accruing to the residue by virtue of the construction of the road is in harmony with the West Virginia statutes. As respects the measure of damage to the residue—or the 1,500-acre tract not taken— we are of opinion that the learned judge correctly instructed the jury in his general charge.

It now remains for us to determine as to whether the court erred in excluding evidence offered by the plaintiff below tending to show the extent to which the residue had been damaged by the location of the road. It is insisted that, owing to the close proximity of the right of

way to the foot of the mountain, that portion of the residue lying north of the land taken is damaged in that the right of way leaves no available space or ground upon which to erect a plant for the successful operation of a coal mine. From the evidence it appears that the railroad skirts the mountain, cutting off a narrow strip of bottom land adjacent to the river; and there was also evidence tending to show that, to successfully develop and operate a coal mine on that portion of the residue, it would be necessary to make an excavation at the foot of the mountain just above the right of way, so as to secure enough level land upon which to erect tipples, shafts, side tracks, etc. It is insisted that, had it not been for the location of the right of way at this point, there would have been ample bottom or level land at the base of the mountain for such purposes, and that, therefore, the location of the right of way damaged the residue to an amount equal to the sum necessary to excavate and prepare a sufficient space of ground upon which to erect the proposed plant, including shafts, tipples, side tracks, etc. It is further insisted that, if the road had been located along the river bank, there would have been ample room between the right of way and the mountain to permit the erection of tipples, shafts, side tracks, etc., and that thereby the damage to the residue would have been greatly minimized.

The instruction to the effect that the jury was not to consider the land as a coal proposition, or as coal-producing property, was inconsistent with the other portion of the charge, which the court had submitted to the jury relative to the rule by which they were to be governed in determining the damage to the residue. If the court intended thereby to say to the jury that they were *not* to consider what might be earned by the future operation of a coal mine on a royalty basis, then there could be no ground upon which to base a valid exception. But if, on the other hand, it was intended to convey the idea that, in determining the damage to the residue they were not to consider the residue as coal lands, then that is an entirely different proposition. There was ample evidence to show that the entire tract of land was underlaid with coal, and this fact gives to this particular land a special value, just as it would a tract of land that was heavily timbered or possessed any other special value. These lands containing merchantable coal, as they do, if it should appear from the evidence that the location of the road has rendered the residue less valuable as coal lands, it necessarily follows that the owner would be entitled to recover such damages as he may have sustained in that respect.

The court, among other things, excluded the evidence of A. Z. Litz. The exception to the action of the court in excluding such evidence is embodied in exception No. 13. The evidence excluded is as follows:

"Q. 50. Now, then, considering it as a coal-bearing tract, I would like for you to state your estimate of the damage to the residue of the tract by reason of this 15 acres being cut off between the river and the railroad, over and above the peculiar benefits, if any, from the construction of the road? A. I can't state that. It would be more than I have stated. Q. 51. How much more, Mr. Litz? A. Well, the fact of putting in sidings, and if you would shaft, it would be deeper above the road, you would have to go deeper for the coal, and it is something, I couldn't say just how much the difference would be."

Under the ruling we have announced the foregoing evidence was undoubtedly pertinent to the issue bearing upon this point. We think that in fixing the value of the "residue" the same kind and class of testimony is competent as applies to the valuation of the land taken; that for the purpose of ascertaining the damage done by the construction and operation of a railroad the jury should first ascertain the value —taking into consideration its location, capabilities, etc., before the road is constructed, or rather before the right of way was located—and then ascertain its value with the road located and constructed. From such depreciation as the jury might find is covered by the location and construction of the road should be taken such special or peculiar benefits as accrued to the residue by reason of the construction of the road. While it is true that merely speculative elements of value should be excluded, the capacity of the residue to produce—that is, to furnish—merchantable coal, in view of the conditions existing and almost sure to be anticipated in the near or immediate future, remove this element of value from the dominion of speculation and make it sufficiently certain to be the basis for valuation. Most of the testimony offered and rejected is competent, not as fixing the measure of damage, but as relevant upon the question of damage; that is, the market value of the land as affected by the location of the road with reference to the manner and means of mining and marketing the coal.

We are of opinion that the court erred in excluding the testimony embodied in exception No. 13, as well as other testimony of similar import, and that it was error to intruct the jury that they were not to consider the land "as a coal proposition or as coal-producing property." As the case goes back for a new trial, it is hardly necessary to discuss and pass upon each assignment of error. Adopting the principle which we have announced. the court will have no difficulty in controlling the scope of the testimony.

For the reasons hereinbefore stated, the judgment of the court below must be reversed. The case is therefore remanded, to the end that the judgment of the court below be set aside and a new trial had.

Reversed.